TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-07-00105-CV





Trian LLC, Appellant


v.


NovaStar Mortgage, Inc., Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT

NO. D-1-GN-04-004007, HONORABLE STEPHEN YELENOSKY, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N


 Appellee NovaStar Mortgage, Inc. is a company that purchases mortgage loans and
related mortgage servicing rights from companies that originate and process mortgage loans. In late
2002, it entered into a contract with appellant Trian, LLC, which is a company that originates,
underwrites, and processes applications for residential mortgage loans, under which NovaStar would
buy and service mortgage loans originated by Trian. In late 2004, NovaStar sued Trian, alleging that
Trian breached the parties' contract when it did not repurchase three loans as required by the
contract. The trial court granted summary judgment in NovaStar's favor, awarding NovaStar
$168,667.80 in damages and $41,785 in trial court attorney's fees, plus costs, prejudgment interest,
and conditional appellate attorney's fees. On appeal, Trian contends that the trial court erred in
granting summary judgment because NovaStar did not prove there was no issue of material fact as
to its breach of contract claim and because Trian raised a fact issue as to its affirmative defense of
estoppel. We affirm the trial court's judgment.


Standard of Review

 To be entitled to summary judgment on a claim for breach of contract, a plaintiff
must prove that no question of material fact remains as to the following four elements of the claim:
(1) a valid contract existed between the parties; (2) the plaintiff performed or tendered performance;
(3) the defendant breached a duty it owed under the contract; and (4) the plaintiff was damaged as
a result. Roundville Partners, L.L.C. v. Jones, 118 S.W.3d 73, 82 (Tex. App.--Austin 2003,
pet. denied); see Kendziorski v. Saunders, 191 S.W.3d 395, 402 (Tex. App.--Austin 2006, no pet.)
(in reviewing summary judgment, we resolve doubts and take as true evidence in favor of
nonmovant; movant is entitled to summary judgment if it demonstrates there are no genuine issues
of material fact and establishes all elements of claim as matter of law). NovaStar established that
the parties had a valid contract, which contained a provision that, under certain circumstances,
required Trian to buy back loans sold to NovaStar; NovaStar performed its obligations under the
contract, purchasing a number of loans from Trian, including the three loans at issue here; the
first three payments were missed on all three loans, triggering Trian's contractual obligation to
repurchase the loans from NovaStar; NovaStar demanded that Trian buy back the loans as provided
in the contract; and Trian refused. Thus, unless Trian presented summary judgment evidence
sufficient to raise a fact issue on one of the elements of NovaStar's claim or on each element of
one of Trian's affirmative defenses, the trial court properly granted summary judgment in
NovaStar's favor. See Hope's Fin. Mgmt. v. Chase Manhattan Mortgage Corp., 172 S.W.3d 105,
108 (Tex. App.--Dallas 2005, pet. denied).


Factual Background The parties' contract provides that Trian "will be obligated to repurchase any loan in
which the borrower does not make one of the first three scheduled Principal and Interest
payments due to [NovaStar] under the Mortgage Note" (the "buy-back provision"). (1) On or about
November 3, 2003, Trian closed two loans to a person who claimed to be named Brittany Nguyen. 
The loans were for $218,222.74 and $54,497.03. It was later discovered that the person who
took out the loan had stolen Nguyen's identity; the thief has not been identified. On or about
January 4, 2004, Trian originated a $232,000 loan to Jason Maxwell. NovaStar bought the Nguyen
and Maxwell loans, but on November 18, 2004, after Nguyen and Maxwell failed to make any of the
first three scheduled payments, NovaStar sent a demand letter asking Trian to buy back the loans
pursuant to the contract provisions. (2) Trian refused, and NovaStar filed suit. 

 NovaStar moved for summary judgment, pointing to the contract's provisions and
providing documentation showing the sums NovaStar paid for the loans, the sums paid in
maintaining and servicing the properties, and that the first three payments on all three loans were
never paid. NovaStar also provided proof that it demanded Trian's action under the contract and that
Trian refused to comply. In response to NovaStar's motion for summary judgment, Trian asserted
that the borrower on the Nguyen loans had committed identity theft in obtaining the loans and, thus,
there was no actual borrower whose default would trigger the buy-back provision. Trian also
contended that because Trian relied on an inaccurate credit report provided by NovaStar in making
the loans, NovaStar was contributorily or comparatively negligent in causing the loss on the Nguyen
loans. As for the Maxwell loan, Trian argued that because a NovaStar underwriter decided to
overlook "certain negative aspects of borrower Maxwell's credit history," NovaStar was estopped
from seeking recovery from Trian. Trian asserted that NovaStar "induced Trian to sell the loan to
NovaStar by . . . independently approving the Maxwell Loan." 

 NovaStar replied to Trian's response, asserting that Trian had not refuted that it had
a contractual duty to buy back the Nguyen and Maxwell loans and arguing that the plain language
of the contract negated the burdens that Trian was attempting to place on NovaStar for the writing
of the loans. NovaStar argued that "Trian contractually shifted to itself the risk of loss under the
circumstances here. As a matter of law, therefore, NovaStar owed no underwriting or other duties
to Trian." NovaStar contended that Trian had not raised a fact issue as to whether NovaStar owed
any duties to Trian beyond those set out in the contract; that the Nguyen credit report was prepared
using information supplied by credit reporting agencies and that Trian thus would have gathered the
same information had it used a report from an agency other than NovaStar; that NovaStar did not
"approve" the Maxwell loan; and that even if there was evidence of NovaStar's approval of the loan,
Trian still had an absolute duty to buy back the loan, regardless of the reason for the default.


The Nguyen Loans

 On NovaStar's claims related to the Nguyen loans, Trian asserts that the buy-back
provision arises only if "the borrower does not make one of the first three scheduled Principal and
Interest payments," but because the person who took out the loans committed identity theft, there
was no "borrower" or "mortgage note" under the NovaStar/Trian contract, and its contractual buy-back duties were not triggered by the default on the Nguyen loans. Trian also argues that NovaStar
is estopped from seeking the buy back of the Nguyen loans because Trian decided to make the loans
after reviewing a credit report prepared by NovaStar.

 Trian first contends that because the loans were made in Nguyen's name as a result
of identity theft, the buy-back provision was not triggered. Trian's argument boils down to this: the
Nguyen loans were made through fraud. There is no legitimate borrower on the loans, and Nguyen
is not obligated on the loans because she was the victim of identity theft and did not sign the
mortgage papers. Because there is no legitimate borrower, Trian insists, the mortgage note is a
sham, and the buy-back provision cannot be triggered by a sham note and borrower. We disagree.

 The parties' contract does not include provisions related to fraud or identity theft. It
does not provide protections for Trian in the event of a fraudulently obtained loan or include
provisions allocating risks and losses due to fraud. The buy-back provision is straight-forward: if
a borrower misses one of the first three payments on a mortgage, Trian is "obligated to repurchase"
the loan. The contract does not shift the burden of loss to NovaStar in case of fraud, therefore the
loss must remain on Trian, as provided by the plain language of the contract. Trian has not provided
any authority to support its argument that because the loans were obtained through fraud, legally,
there is no borrower or mortgage note. We cannot imply or read into the contract language related
to how the parties allocated loss due to fraud. We can only rely on the plain contractual language
and the facts as established by the parties' summary judgment evidence. The real Brittney Nguyen
did not take out the loans, but someone else, referred to as Jane Doe or "Brittney Nguyen" in various
filings, did. Jane Doe or "Brittney Nguyen" is the borrower, and she did not make any of the first
three payments on the loan. Although the loans were obtained through fraud, the loans were made
to a borrower, who defaulted immediately on the loans. Indeed, Trian sought and obtained a default
judgment against Jane Doe that found that Doe was the owner of the property, that the promissary
notes and deeds of trust constituted valid liens, and that Trian had the right to foreclose on the
property. NovaStar established that the loans were made by Trian, bought by NovaStar, and
defaulted on by the sham borrower. Trian is thus obligated to repurchase the loans unless it can raise
a fact issue as to each element of its estoppel defense.

 Trian states that it "ordered [the October 2003] credit report from NovaStar" and that
NovaStar is estopped from asserting its claim against Trian because the report contained inaccurate
information. Trian says, "In sum, NovaStar is now asserting that Trian should not have made the
Nguyen loans, contrary to its position that Nguyen applicant was credit worthy." 

 A party asserting estoppel must show: "(1) a false representation or concealment of
material facts; (2) made with actual or constructive knowledge of those facts; (3) to a party without
knowledge or the means of knowledge, of those facts; (4) with the intention that it should be acted
on; and (5) the party to whom it was made must have relied or acted on it to his prejudice." 
Ghashim v. State, 104 S.W.3d 184, 188 (Tex. App.--Austin 2003, no pet.). 

 Trian states that it relied on a credit report provided by NovaStar in writing the
Nguyen loans. The summary judgment evidence includes the report, dated October 2, 2003, which
is based on information obtained from three credit reporting agencies, does not reflect any
irregularities or fraud alerts related to Nguyen's credit history, and does not list two other mortgages
that were taken out in Nguyen's name in September 2003. Although the October report does not
include a fraud alert or the September 2003 loans, it does reflect about twenty inquiries into
Nguyen's credit within just over one month's time, between August 22 and October 2, 2003,
including inquiries by at least six other mortgage companies. A later credit report, dated
March 11, 2004, shows the two additional loans that were opened in Nguyen's name in
September 2003 and has a fraud alert that states that Nguyen is the possible victim of identity theft. 
The record also includes a letter from Nguyen stating that she learned in early February 2004 that
she was the victim of identity theft. 

 Both Nguyen credit reports were printed from a NovaStar website,
www.NovastarIS.com. Although the October 2003 report was printed from the NovaStar website,
it states that it was prepared by CSC Mortgage Services for Trian, based on information obtained
from the Trans Union, Experian, and Equifax Information Services credit reporting agencies. The
report states that CSC prepared the report but had not verified the information. Similarly, the
March 2004 report was prepared for NovaStar by Chase Credit Research using information from the
same three reporting agencies, and Chase stated it had not verified the information. Both reports
state, "While this report is being used for some real estate lending purposes, it is not a Residential
Mortgage Credit Report as defined by FNMA, FHLMC and FHA/VA guidelines." 

 Trian's argument is that because NovaStar provided Trian with the October 2003
report, which did not include a fraud alert or show two September mortgage loans taken out in
Nguyen's name, NovaStar essentially acquiesced to Trian's making of the Nguyen loans and may
not now assert its claims related to the loans. We disagree.

 First, Trian has presented no evidence to show that NovaStar had actual or
constructive knowledge of the true facts or that it provided the October 2003 report to Trian,
intending that Trian would write the loans despite the theft of Nguyen's identity. The report may
have been given to Trian by NovaStar but it was prepared by CSC Mortgage Services based on
information provided by three credit reporting agencies. NovaStar did not collect the information
and there is no indication in the record that NovaStar had any duty to vet the information, either in
regards to its relationship with Trian or in general as a company that bought credit reports from
report providers, or that NovaStar in any way warranted the information contained in the report. 
Finally, the evidence does not raise a fact issue as to whether the October 2003 report contains a
material misrepresentation. At the time of the report, the identity theft had not been discovered and,
thus, there could not have been a fraud alert noted. Further, the report was run on October 2, 2003,
the record does not establish when in September the other mortgage loans were written, and there
is no evidence as to how long it takes for credit information to be reported. Trian did not establish
that the September loans, knowledge of which it argues would have stopped it from writing the
loans, (3) should have been reflected on the report run on October 2, 2003. Trian did not raise a fact
issue as to each element of estoppel, see Ghashim, 104 S.W.3d at 188, and therefore the trial court
did not err in granting summary judgment related to the Nguyen loans in NovaStar's favor.


The Maxwell Loan

 With regard to the Maxwell loan, Trian argues that NovaStar is estopped from
seeking to recover for that loan because it "independently approv[ed] the Maxwell loan while
overlooking negative aspects of Maxwell's credit history." We disagree.

 As summary judgment evidence, Trian produced emails and notes by Sharon Davis,
a Trian underwriter. (4) Davis wrote an email to Stephanie Verdugo, a NovaStar underwriter,
explaining that Trian had received an application from Maxwell for "an 80% Cash-out Refinance
on a home that is one year old," but that Maxwell had "been making 'interest only payments since
2/02 and is labeled 'Construction Loan.'" Davis said she had explained that Trian "cannot do a cash-out on a 'construction loan' and the Broker's response is that they have been living there for 1 year
with a history of making payments." Verdugo responded, "[W]e should be fine on this as long as
we can evidence that the house has been complete and the borrower has been residing in the house
for the last year and we can evidence who all is on title." A week later, Davis made notes that she
spoke with Verdugo about the late payments. Verdugo said Trian should get a letter from the bank
that wrote the construction loan "stating that the payments were not required and were made above
and beyond requirements of loan and we should be OK." Davis whether Trian should penalize
Maxwell, and Verdugo told her, "'No. As long as you document they were not required.' Then
added, 'But also, verify previous housing history to complete the 24 months history.'" 

 Davis next spoke to the vice-president of the Amarillo Bank, who explained that
Maxwell's wife died of cancer just before the construction loan matured and that the bank allowed
the family to remain in the home while they dealt with their grief. Maxwell told the bank that he
would make payments if possible and refinance when he was able, and the bank told Davis that
"[t]he payments were not required and were made above and beyond the requirements of the note." 
The vice-president also explained that at least one payment was processed by the bank one month
after it was received from Maxwell and that the delay was not Maxwell's fault. The vice-president
sent Davis a letter explaining in writing that shortly after the Maxwells began construction,
Mrs. Maxwell was diagnosed with terminal lung cancer; she died shortly after the house was
completed. The bank is more than 100 years old and requires its employees to be "attuned to our
customers and their needs," and the vice-president said, "[d]uring this period of grief, Mr. Maxwell
did not need a well secured bank making demands." Further, Maxwell and his builder had a dispute
about overcharges, which Maxwell ultimately won in a lawsuit. The letter stated, "In the interim
period, the note did not have an interest repayment schedule; however, Mr. Maxwell did make
monthly interest payments." Finally, the vice-president explained that Maxwell made an interest
payment in September 2003, but that it did not get posted to Maxwell's account until October, when
Maxwell pointed out the omission at the time he made the October payment.

 Trian argues that NovaStar "induced Trian to sell the loan to NovaStar by NovaStar
independently approving the Maxwell Loan while overlooking negative aspects of the borrower's
credit history" and that, because NovaStar "overlook[ed] its own credit-worthiness guidelines,"
accepting the risk that Maxwell might default, NovaStar should not be permitted to shift that risk to
Trian and demand Trian's compliance with the buy-back provision.

 According to the evidence, NovaStar's underwriting guidelines required "that a
borrower's payment status be '0x30' or not late in the last 30 days." The evidence establishes that,
when a question arose about Maxwell's late payments, Trian contacted the bank that made the
construction loan in question and was informed that Maxwell had made payments when not required
to do so and that his payments were "above and beyond" the loan's requirements. The bank also
informed Trian that Maxwell had made payments in both September and October 2003 but that the
September payment was posted late due to the bank's handling of the payment, not because Maxwell
had paid late. Thus, not only did the bank explain that Maxwell had not been late in the last thirty
days, it explained that Maxwell had made interest payments when not required to do so. NovaStar
did not provide to Trian any information about Maxwell's credit history; it merely informed Trian
of what information was necessary to learn about Maxwell's construction loan. Trian obtained that
information from the bank, and from the evidence provided, the bank's information showed that
Maxwell was not in violation of NovaStar's "'0x30' or not late in the last 30 days" requirements.

 Further, Trian did not present evidence to raise a fact issue as to whether NovaStar
provided false information, knew about the misrepresentation, or intended Trian to rely on the
misrepresentation. Trian did not show that NovaStar provided any information about
Maxwell's credit history. NovaStar's underwriter discussed Maxwell with Trian's underwriter, but
NovaStar made no representations about whether Maxwell qualified for the loan. NovaStar only
explained what it would require to consider him qualified. Nor is there any evidence to show that
NovaStar knew that Maxwell was not credit-worthy or that it had any information about Maxwell
to contradict what Trian learned from the bank. Because Trian did not present evidence raising a fact
issue about each element of estoppel, see Ghashim, 104 S.W.3d at 188, the trial court did not err in
granting NovaStar summary judgment on its claims related to the Maxwell loan. 


Conclusion Having considered Trian's complaints related to the Nguyen and Maxwell loans and
having determined that Trian failed to raise a fact issue to negate NovaStar's entitlement to judgment
as a matter of law under the buy-back provision, we affirm the trial court's judgment.


 __________________________________________

 David Puryear, Justice

Before Justices Patterson, Puryear and Pemberton

Affirmed

Filed: August 31, 2009
1. The contract also includes a clause that provides that, upon discovery of a material
misrepresentation, NovaStar could require Trian, within sixty days of notice, to repurchase "any loan
containing such material misrepresentation," and an indemnification clause under which Trian
agreed to indemnify NovaStar from any loss it incurred arising out of "the inaccuracy or breach of
any warranty or representation made by [Trian] in this Agreement, or the breach by [Trian] of any
obligation or covenant to be performed by it under this Agreement." Trian argues that NovaStar
cannot rely on the indemnification or misrepresentation provisions, but NovaStar responds that it is
not suing under those clauses and is relying solely on the buy-back provision.
2. According to NovaStar's motion for summary judgment, NovaStar foreclosed on the
Nguyen and Maxwell properties and sold them to third-parties, reducing the amount of damages it
sought from Trian accordingly. The loan principals on the Nguyen loans totaled $272,719.77,
NovaStar incurred $52,521.31 in lost interest and maintenance costs, and the property was sold for
$236,000, of which NovaStar netted $204,984.75; NovaStar's net loss on the Nguyen loans was
therefore $120,256.33. The principal on the Maxwell loan was $231,814.47, NovaStar incurred
$24,803.90 in lost interest and maintenance costs, and the property was sold for $175,500, of which
NovaStar netted $158,206.90; NovaStar's net loss on the Maxwell loan was $98,411.47. NovaStar
offset its damages by a $50,000 credit it owed Trian on other loans. Thus, NovaStar asserted that
Trian owed NovaStar a total of $168,667.80 ($120,256.33 plus $98,411.47, less $50,000).
3. Trian's evidence does not explicitly establish this fact, but it can be implied from the
evidence and arguments. In his affidavit, Martin Cantu, Trian's president, states that Trian paid
NovaStar for the report, that the report "was not an accurate representation" of Nguyen's credit
because it did not disclose the identity theft or the September loans, and that "Trian would not have
made the Ngyuen [sic] loans but for the NovaStar credit report." Cantu does not specifically aver
that Trian would not have written the loans if it had known about the September loans.
4. Cantu's affidavit, attached to Trian's motion for summary judgment, also states that a
"NovaStar Loan Approval Summary for the Maxwell loan" was attached as exhibit A-3. However,
the clerk's record does not contain this exhibit, and communications with the trial court clerk's office
confirmed that they do not have the exhibit in their possession.